# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 9, 2023         Decided August 8, 2023

No. 22-5121

OPTIMAL WIRELESS LLC,
APPELLANT

v.

INTERNAL REVENUE SERVICE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-02297)

*Jason B. Freeman* argued the cause and filed the briefs for appellant. *Kodie P. Bennion* and *Glen E. Frost* entered appearances.

*Ellen P. DelSole*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Francesca Ugolini* and *Geoffrey J. Klimas*, Attorneys.

Before: SRINIVASAN, *Chief Judge*, WILKINS, *Circuit Judge*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: The Affordable Care Act obligates large employers to provide their full-time employees with health insurance coverage meeting certain requirements. If an employer fails to provide coverage or provides noncomplying coverage, it is liable for an exaction under 26 U.S.C. § 4980H.

In 2019, the Internal Revenue Service sent two letters proposing exactions under Section 4980H to appellant Optimal Wireless, a wireless communications company. Optimal then filed an action against the IRS and the Department of Health and Human Services, claiming that the agencies had failed to satisfy certain procedural requirements before imposing the proposed exactions. Optimal sought a declaratory judgment and an injunction barring the IRS from collecting any money without complying with those procedures.

The district court dismissed Optimal's suit for lack of jurisdiction. The court held that an exaction under Section 4980H is a "tax" for purposes of the Anti-Injunction Act, which strips courts of jurisdiction over suits having the "purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). We agree with the district court.

I.

A.

The Patient Protection and Affordable Care Act (ACA) "aims to increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (*NFIB*). The ACA contains both an individual mandate and an employer mandate.

The individual mandate "requires most Americans to maintain 'minimum essential' health insurance coverage." *Id.* at 539 (quoting 26 U.S.C. § 5000A). Many people obtain the required coverage through their employer. *Id.* A person who does not comply with the individual mandate must pay a "[s]hared responsibility payment" to the federal government. *Id.* (alteration in original) (quoting 26 U.S.C. § 5000A(b)). The Supreme Court upheld the individual mandate in *NFIB* as a constitutional exercise of Congress's power to tax. *Id.* at 574. Congress, though, later "effectively nullified the penalty by setting its amount at $0." *California v. Texas*, 141 S. Ct. 2104, 2112 (2021) (citing 26 U.S.C. § 5000A(c)).

To facilitate compliance with the individual mandate's requirement for Americans to obtain health insurance, the ACA also imposes obligations upon employers. The employer mandate, which is at issue in this case, requires "large employer[s]" to give full-time employees "the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan." 26 U.S.C. § 4980H(a)(1), (b)(1)(A). A "large" employer is an employer that had an average of at least fifty full-time employees in the preceding year. *Id.* § 4980H(c)(2)(A).

The employer mandate is backed by exactions imposed against noncomplying employers. *Id.* § 4980H(a)–(b). To avoid incurring an exaction, employers must do more than just offer minimum essential coverage. First, they must provide an "affordable" health care option, defined by reference to the applicable taxpayer's household income. *See id.* § 36B(c)(2)(C)(i)(II). Second, they must offer a plan providing "minimum value," defined as a plan covering 60 percent or more of the total allowed costs. *See id.* § 36B(c)(2)(C)(ii).

If an employer fails to provide coverage meeting those requirements (or fails to provide coverage altogether), its employees may be eligible to receive a premium tax credit or cost-sharing reduction, mechanisms the ACA established to defray the costs of health insurance and health care. *See id.* § 36B (premium tax credits); 42 U.S.C. § 18071 (cost-sharing reduction). And if an employee claims a premium tax credit or cost-sharing reduction, thus denoting a failure by her employer to provide the requisite coverage, her employer is subject to one of two exactions imposed by subsections (a) and (b) of Section 4980H.

First, under Section 4980H(a), an employer is liable for an exaction if it "fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan . . . for any month." 26 U.S.C. § 4980H(a)(1). Under that provision, an employer is subject to "an assessable payment equal to the product of the applicable payment amount [of 1/12 of $2,000] and the number of individuals employed . . . as full-time employees during such month." *Id.* § 4980H(a), (c)(1).

Second, under Section 4980H(b), an employer is liable for an exaction if it does "offer[] to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage" but an employee is still certified as having received a premium tax credit or cost-sharing reduction. *Id.* § 4980H(b). (That can occur if the offered coverage is unaffordable or inadequate in value.) In that case, an employer is subject to "an assessable payment equal to the product of the number of full-time employees" having received such certification "and an amount equal to 1/12 of $3,000." *Id.* § 4980H(b)(1). The statute also provides that an exaction under Section 4980H(b) cannot exceed the maximum possible exaction under Section 4980H(a). *See id.* § 4980H(b)(2).

Section 4980H(a) thus differs from Section 4980H(b) in two ways.  First, Section 4980H(a) applies when an employer does not provide minimum essential coverage at all, whereas Section 4980H(b) applies when the employer offers coverage but that coverage fails to qualify as affordable or as providing minimum value.  Second, Section 4980H(a)'s exaction amount is a function of the employer's total number of full-time employees, whereas Section 4980H(b)'s exaction amount is a function of only the number of employees certified as having received a premium tax credit or cost-sharing reduction.

B.

Because the district court resolved this case on a motion to dismiss the complaint, we take as true the factual allegations in Optimal's complaint.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Optimal provides wireless communications services and products in Texas, New Mexico, Oklahoma, and Louisiana.  In 2019, the IRS sent letters to Optimal certifying that, for at least one month in 2016 and 2017, one or more of Optimal's employees had been enrolled in a qualified health plan for which a premium tax credit was allowed.  As a result, the IRS's letters explained, Optimal owed the IRS exactions under Section 4980H equaling $395,640 for 2016 and $736,383 for 2017.

Optimal then filed an action in district court against the IRS and the Department of Health and Human Services (HHS).  Optimal argued that the applicable regulations require HHS (rather than the IRS) to issue the certification concerning an employee's receipt of a premium tax credit or cost-sharing reduction, but HHS had not done so.  *See* 42 U.S.C.

§ 18081(e)(4)(B)(iii); 45 C.F.R. § 155.310(h).  Optimal further contended that HHS had not provided it with an appeals process as required by 42 U.S.C. § 18081(f)(2)(A).  Finally, Optimal submitted that neither the IRS nor HHS had complied with 26 U.S.C. § 6751(b), which requires the immediate supervisor of the person making the determination to give written approval of an assessment.

Optimal sought attorneys' fees, declaratory relief, and an injunction barring the assessment and collection of the Section 4980H exactions absent compliance with the procedural requirements alleged to have been infringed.  The government moved to dismiss Optimal's suit on various grounds, including that the Anti-Injunction Act divests the district court of jurisdiction over the action.

The district court granted the government's motion to dismiss for lack of jurisdiction.  *See Optimal Wireless LLC v. IRS*, No. 1:20-cv-02297, 2022 WL 1462325 (D.D.C. Mar. 8, 2022).  The court held that an exaction under Section 4980H is a "tax" for purposes of the Anti-Injunction Act's jurisdictional bar against a court maintaining any suit seeking to "restrain[] the assessment or collection of any tax."  26 U.S.C. § 7421(a).

## II.

The Anti-Injunction Act provides that, with certain exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a).  The Act "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes."  *NFIB*, 567 U.S. at 543.  Because of the Act's general prohibition against suits

seeking to restrain the assessment or collection of a tax, "taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Id*.

In this case, Optimal plainly seeks to "restrain[] the assessment or collection" of an exaction under Section 4980H. 26 U.S.C. § 7421(a). "The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation," and courts determine the target of a suit by looking at the "face of the taxpayer's complaint." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1589–90 (2021). The face of Optimal's complaint requests the district court to "enjoin the IRS from assessing and collecting the assessable payment under 26 U.S.C. § 4980H against Optimal Wireless." Compl. ¶ F, J.A. 12. And while Optimal also requested declaratory relief to that same end, *see id.* ¶¶ A–E, J.A. 11–12, that request, for purposes of the Anti-Injunction Act, rises or falls with its request for injunctive relief, *see Cohen v. United States*, 650 F.3d 717, 727–28 (D.C. Cir. 2011) (en banc).

Because Optimal's complaint seeks to "restrain[] the assessment or collection" of a Section 4980H exaction, 26 U.S.C. § 7421(a), the pivotal question for purposes of the Anti-Injunction Act is whether that exaction is a "tax" within the meaning of the Act. If so, the Act deprives a court of jurisdiction over Optimal's suit. Our fellow circuits have disagreed on whether a Section 4980H exaction is a "tax" for purposes of the Act's jurisdictional bar. *Compare Hotze v. Burwell*, 784 F.3d 984, 996–99 (5th Cir. 2015) (Section 4980H exaction is a tax), *with Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87–89 (4th Cir. 2013) (Section 4980H exaction is not a tax); *see also Korte v. Sebelius*, 735 F.3d 654, 671 (7th Cir. 2013) (indicating that Section 4980H exaction would not constitute a tax). We hold that an exaction under Section 4980H is a "tax" within the meaning of the Anti-Injunction Act.

Optimal contends as a threshold matter that, for us to reach that conclusion, Section 4980H must contain a clear statement that its exactions constitute a "tax." Optimal relies on decisions requiring a party to "clear a high bar to establish that a statute . . . is jurisdictional," given the "harsh consequences" attending such a reading. *United States v. Wong*, 575 U.S. 402, 409 (2015); *see Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). The statute subject to that "high bar," however, is the Anti-Injunction Act, not Section 4980H. And there is no dispute that the Anti-Injunction Act is jurisdictional—i.e., that it "deprive[s] the District Court of jurisdiction" when it applies. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 749 (1974). The question of whether *another* statute is best read to implicate the Anti-Injunction Act's jurisdictional bar—which here turns on whether Section 4980H imposes a "tax"—is governed by ordinary principles of statutory interpretation, not by any clear-statement rule.

In *NFIB*, accordingly, the Supreme Court assessed whether the ACA's individual mandate imposed a "tax" for purposes of the Anti-Injunction Act's jurisdictional bar without invoking any clear-statement rule. *See* 567 U.S. at 543–45. The Court explained that, because the "Anti-Injunction Act and the Affordable Care Act . . . are creatures of Congress's own creation," "[h]ow they relate to each other is up to Congress." *Id.* at 544. And "the best evidence of Congress's intent" in that regard "is the statutory text." *Id.* The Court concluded that because Congress repeatedly described the exaction for noncompliance with the individual mandate as "a 'penalty' rather than a 'tax,'" the Anti-Injunction Act's jurisdictional bar did not apply. *Id.* at 543–44 (quoting 26 U.S.C. § 5000A(b), (g)(2)); *see id.* at 546.

Applying that same approach to Section 4980H's exaction yields the opposite conclusion. Whereas Congress consistently labeled the exaction associated with the individual mandate a "penalty" and never once referred to it as a "tax," Congress described the Section 4980H exaction as a "tax" four different times.

Of those four references, three are found in Section 4980H itself. First, subsection (b)(2) of that provision, which pertains to employers who offer coverage that is unaffordable or inadequate in value, states that the "aggregate amount of *tax* determined under [subsection (b)(1)] . . . shall not exceed the product of the applicable payment amount and the number of individuals employed by the employer as full-time employees during such month."  26 U.S.C. § 4980H(b)(2) (emphasis added).  Second, subsection (c)(7) provides that, "[f]or denial of deduction for the *tax* imposed by this section, see section 275(a)(6)."  *Id.* § 4980H(c)(7) (emphasis added).  Third, that same subsection is titled "*Tax* nondeductible."  *Id.* (emphasis added).  Fourth, beyond the multiple references in the terms of Section 4980H itself, another provision directs the Secretary of Health and Human Services to "establish a separate appeals process for employers who are notified" that they "may be liable for a *tax* imposed by section 4980H of Title 26."  42 U.S.C. § 18081(f)(2)(A) (emphasis added).

As the Supreme Court explained in *NFIB*, "[i]t is up to Congress whether to apply the Anti-Injunction Act to any particular statute, so it makes sense to be guided by Congress's choice of label on that question."  567 U.S. at 564; *see id.* at 544.  The multiple statutory references to Section 4980H's exaction as a "tax" thus render it a tax for purposes of the Anti-Injunction Act.  Indeed, the Supreme Court has "applied the Anti-Injunction Act to statutorily described 'taxes' even where that label was inaccurate" (in that the relevant payment

obligation fell outside of Congress's tax power).  *Id.* at 544 (citing *Bailey v. George*, 259 U.S. 16 (1922)).  If that is so, the Anti-Injunction Act necessarily applies to the "statutorily described 'taxes'" imposed by Section 4980H.

Optimal attempts to explain why, for reasons apart from the Anti-Injunction Act, Congress might have wanted to describe Section 4980H's exaction as a "tax" in two of the aforementioned provisions, 26 U.S.C. § 4980H(c)(7) and 42 U.S.C. § 18081(f)(2)(A).  But even if Congress's choice to use the label "tax" has consequences beyond the Anti-Injunction Act, Optimal does not explain why we should disregard the implications of that choice for purposes of the Anti-Injunction Act, too.  To the contrary, insofar as the decision to invoke the term "tax" carries multiple implications, we generally assume that "Congress said what it meant and meant what it said" throughout.  *Loughrin v. United States*, 573 U.S. 351, 360 (2014).  There is no reason to assume otherwise here.

Notably, Optimal offers no alternate explanation for the use of the term "tax" in Section 4980H(b)(2)'s reference to the "aggregate amount of tax determined under [Section 4980H(b)(1)]."  26 U.S.C. § 4980H(b)(2).  True, Optimal incurred its penalty under Section 4980H(a) rather than Section 4980H(b), as it failed to provide minimum essential coverage altogether (as opposed to providing coverage that was unaffordable or inadequate in value).  But Congress repeatedly referred to the exaction imposed by Section 4980H as a "tax" without distinguishing between subsections (a) and (b), and Optimal provides no plausible reason that Congress would have intended to treat the subsections differently under the Anti-Injunction Act.  *See id.* § 4980H(c)(7) (referring to the "tax imposed by this section"); 42 U.S.C. § 18081(f)(2)(A) (referring to the "tax imposed by section 4980H of Title 26").

Optimal emphasizes that, in addition to describing the exaction imposed by Section 4980H as a "tax" in multiple provisions, Congress also labeled the same exaction an "assessable payment" or a "penalty." Congress's use of those additional labels, though, does not dissuade us from concluding that its repeated references to the exaction as a "tax" require treating it as one for purposes of the Anti-Injunction Act.

First, Section 4980H uses the phrase "assessable payment" seven times to describe the provision's exaction. *See* 26 U.S.C. § 4980H(a) (imposing "assessable payment" for failure to provide minimum essential coverage); *id.* § 4980H(b)(1) (same for failure to provide coverage that is affordable or adequate in value); *id.* § 4980H(c)(2)(D)(i)(I) (providing instructions on determining employer size "for purposes of calculating . . . the assessable payment under subsection (a)"); *id.* § 4980H(d)(1) (stating that "[a]ny assessable payment provided by this section shall be paid upon notice and demand by the Secretary"); *id.* § 4980H(d)(2) (stating that the "Secretary may provide for the payment of any assessable payment provided by this section on an annual, monthly, or other periodic basis"); *id.* § 4980H(d)(3) (directing the Secretary to "prescribe rules, regulations, or guidance for the repayment of any assessable payment" when certain conditions are met and "the assessable payment would not have been required to be made but for" those conditions).

Congress's use of the phrase "assessable payment" does not conflict with—or otherwise detract from the import of—its choice to label the Section 4980H exaction a "tax" in multiple provisions. The terms are not mutually exclusive. To the contrary, a tax is one species of assessable payment: it is "assessable," and its assessment calls for a "payment." Indeed, the terms of the Anti-Injunction Act refer to the "assessment" of a "tax" as well as its "collection" (i.e., its payment). *Id.* § 7421(a). If Congress had *only* used the more general term

"assessable payment" to describe an exaction under Section 4980H, it might be unclear whether the exaction qualifies as a "tax" for purposes of the Anti-Injunction Act. But because Congress also used the more specific term "tax" to describe the same exaction (and did so repeatedly), it thereby established the applicability of the Anti-Injunction Act.

The same is true of Congress's more occasional use of the word "penalty" to describe the Section 4980H exaction. One previously mentioned provision that labels that exaction a "tax" in one subsection also describes it as a "penalty" in a neighboring subsection. *Compare* 42 U.S.C. § 18081(f)(2)(B) (referring to the "penalty under section 4980H of Title 26"), *with id.* § 18081(f)(2)(A) (referring to the "tax imposed by section 4980H of Title 26"). And one already mentioned provision in Section 4980H that uses the term "assessable payment" also uses the term "assessable penalt[y]" in its title. 26 U.S.C. § 4980H(c)(2)(D) (titled "Application of employer size to assessable penalties"); *see id.* § 4980H(c)(2)(D)(i)(I) (referring to "the assessable payment under subsection (a)").

As is the case with the phrase "assessable payment," the term "penalty" is not inconsistent with the term "tax." Rather, an exaction can be described as both a "tax" and a "penalty." *Compare Tax*, Black's Law Dictionary (11th ed. 2019) ("A charge, usu. monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue."), *with Penalty*, Black's Law Dictionary (11th ed. 2019) ("Punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong . . . ."). After all, "taxes that seek to influence conduct are nothing new." *NFIB*, 567 U.S. at 567. And such taxes, even if they are "designed mainly to influence private conduct, rather than to raise revenue," do not receive a "special pass

from the Anti-Injunction Act" by virtue of their regulatory nature. *CIC Servs.*, 141 S. Ct. at 1593.

To be sure, when examining whether an exaction lies within Congress's tax power as a constitutional matter, the Supreme Court generally uses the term "penalty" to describe exactions whose characteristics take them outside the tax power. *See, e.g.*, *NFIB*, 567 U.S. at 565–68 (citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996); *United States v. La Franca*, 282 U.S. 568, 572 (1931)). In that light, "Congress cannot change whether an exaction is a tax or a penalty for *constitutional* purposes simply by describing it as one or the other." *Id.* at 544. But even if (permissible) taxes and (impermissible) penalties fall into separate categories as a descriptive matter when courts discuss the constitutionality of Congress's exercise of the tax power, "Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the Anti-Injunction Act." *Id.* A telltale way for Congress to do so would be to expressly label the exaction a "tax," as Congress repeatedly did for the exaction under Section 4980H. *See CIC Servs.*, 141 S. Ct. at 1587 (describing a statute that "deem[s]" penalties "to be 'tax[es]' for purposes of the . . . Anti-Injunction Act").

Because Congress repeatedly called the Section 4980H exaction a tax, Optimal's suit is barred by the Anti-Injunction Act. That conclusion, contrary to Optimal's contention, is not foreclosed by our decision in *Halbig v. Burwell*, 758 F.3d 390 (D.C. Cir. 2014), *reh'g en banc granted and judgment vacated*, No. 14-5018, 2014 WL 4627181 (D.C. Cir. Sept. 4, 2014), *appeal dismissed*, No. 14-5018, 2015 WL 5209629 (D.C. Cir. July 9, 2015). Optimal attempts to glean from that case's complicated history an implicit conclusion by our court that the Anti-Injunction Act does not apply to challenges to exactions

under Section 4980H. But whatever else may be true of our decision in that case, it "d[id] not reach the issue" of "our jurisdiction over" the employers' challenge, meaning that it necessarily did not address the applicability of the Anti-Injunction Act. *Id.* at 396. Our decision thus has no precedential effect with respect to that issue. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

In concluding that Optimal's suit falls within the Anti-Injunction Act's jurisdictional bar, we necessarily do not reach the merits of Optimal's challenge to the imposition against it of exactions under Section 4980H. As the government suggests, Optimal may still be able to obtain judicial review of its challenge by bringing a refund suit after it pays any assessed exactions. *See* Gov't Br. 61–62, 63–66; *see also* 26 U.S.C. § 7422(a); *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1067 (D.C. Cir. 2015).

Nor do we reach Optimal's argument, raised for the first time on appeal, that its suit falls within certain enumerated exceptions to the Anti-Injunction Act. The Act prohibits suits to restrain the assessment or collection of any tax "[e]xcept as provided in" a list of provisions, including Sections 6212(a) and 6213(a) of Title 26. *See* 26 U.S.C. § 7421(a). Optimal maintains that those provisions prescribe a specific collection process for certain deficiency payments that fall outside the Act's reach, and that exactions under Section 4980H are one such deficiency payment. The government disagrees. Because Optimal did not raise that argument to the district court in the first instance, we decline to consider it on appeal. *See Potter v. Dist. of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009).

15

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's grant of dismissal for lack of jurisdiction.

*So ordered.*