# United States Tax Court

162 T.C. No. 7

MOHAMED K. ABDO AND FARDOWSA J. FARAH,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5514-20.                                    Filed April 2, 2024.

————

R issued Ps a notice of deficiency dated December 2, 2019. The notice specified March 2, 2020, as the last day to petition the Court. That date was not a Saturday, Sunday, or legal holiday in the District of Columbia. Ps mailed the Petition on March 17, 2020.

Ps resided in Ohio at all relevant times. On March 31, 2020, the President issued a major disaster declaration under the authority of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121–5207, with respect to Ohio as a result of the COVID-19 pandemic. The declaration identified the disaster conditions as "beginning on January 20, 2020, and continuing."

On September 2, 2020, R filed a Motion to Dismiss for Lack of Jurisdiction on the ground that the Petition was not filed within the time prescribed by I.R.C. § 6213(a) or I.R.C. § 7502. Ps contend that I.R.C. § 7508A(d), which provides for a mandatory 60-day extension of certain tax-related deadlines by reason of a federally declared disaster, operated in conjunction with the President's declaration to automatically extend the filing deadline.

**Served 04/02/24**

On June 11, 2021, final regulations were issued with respect to I.R.C. § 7508A(d).  *See* Treas. Reg. § 301.7508A-1(g).  R contends that the regulations apply to this case, that they are entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and that the Petition was untimely filed under their provisions.  Ps agree that *Chevron* provides the proper framework for the Court to review the regulations and that the deadline to file their Petition was not extended under the regulations.  Ps contend, however, that the Petition was timely under all reasonable constructions of I.R.C. § 7508A(d) and that Treas. Reg. § 301.7508A-1(g)(1) and (2) is invalid.

*Held*:  I.R.C. § 7508A(d) provides for an unambiguously self-executing postponement period for the filing of a petition with the Court for a redetermination of a deficiency.

*Held, further*, Treas. Reg. § 301.7508A-1(g)(1) and (2) is invalid to the extent it limits the non-pension-related "time-sensitive acts that are postponed for the mandatory 60-day postponement period . . . [to] the acts determined to be postponed by the Secretary's exercise of authority under [I.R.C. §] 7508A(a)."

*Held, further*, Ps were entitled to an automatic, mandatory 60-day postponement period from January 20, 2020, to at least March 20, 2020, to file their Petition.  Ps' Petition was filed timely, and we have jurisdiction.  R's Motion will be denied.

————

*Megan L. Sullivan* and *David L. Meenach*, for petitioner.

*Louis H. Hill* and *Eric O. Young*, for respondent.

OPINION

MARSHALL, *Judge*:  This deficiency case is before the Court on respondent's Motion to Dismiss for Lack of Jurisdiction (Motion) on the

ground that the petition was not filed within the time prescribed by section 6213(a)[1] or section 7502. To decide the Motion, we must interpret for the first time section 7508A(d), which provides for the mandatory 60-day extension of certain tax-related deadlines by reason of a federally declared disaster.[2] We will deny respondent's Motion for the reasons set forth below.

*Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits attached thereto. These facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See* Rule 1(b); Fed. R. Civ. P. 52(a); *Pearson v. Commissioner*, 149 T.C. 424, 425 (2017). Petitioners resided in Ohio at all relevant times.[3]

Respondent issued petitioners a notice of deficiency dated December 2, 2019, in which respondent determined a $9,634 income tax deficiency and a $166 accuracy-related penalty under section 6662(a) for petitioners' taxable year 2018. The 90th day after December 2, 2019, was Sunday, March 1, 2020. The notice of deficiency specified the following day, March 2, 2020, as the last day to petition the Court. That date was not a Saturday, Sunday, or legal holiday in the District of Columbia. The parties agree that petitioners mailed their Petition to the Court on March 17, 2020.

Between March 19 and July 9, 2020, the Court did not receive mail because of the Court's closure in response to the Coronavirus

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Section 7508A(d) has the heading "Mandatory 60-day extension." Although 60 days is a minimum duration, *see* § 7508A(d)(1) and (2), in keeping with the parties' arguments and for ease of discussion throughout, we will generally refer to a section 7508A(d) extension as lasting 60 days.

[3] Absent stipulation to the contrary, any appeal of this case would lie to the U.S. Court of Appeals for the Sixth Circuit. *See* § 7482(b)(1)(A), (2). Where relevant to the discussion, we note that court's precedent. *See Bontrager v. Commissioner*, 151 T.C. 213, 215 n.2 (2018); *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Disease 2019 (COVID-19) pandemic. On July 10, 2020, the Court received and filed the Petition.

On March 13, 2020, the President of the United States declared a nationwide emergency under section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), 42 U.S.C. §§ 5121–5207, as a result of the COVID-19 pandemic (Nationwide Emergency Declaration). *See* Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020). The President also approved major disaster declarations for each of the 50 states pursuant to section 401 of the Stafford Act. On March 31, 2020, Pete Gaynor, the administrator of the Federal Emergency Management Agency (FEMA), at the direction of the President, signed DR-4507-OH (Ohio Disaster Declaration), which declared the State of Ohio a major disaster area. *See* Ohio; Major Disaster and Related Determinations, 85 Fed. Reg. 26,702 (May 5, 2020). As with each other state disaster declaration, the Ohio Disaster Declaration identified the pandemic conditions warranting the declaration as "beginning on January 20, 2020, and continuing." *See id.* at 26,703.

The Internal Revenue Service (IRS) subsequently issued a series of notices in which the stated purpose was to provide relief under section 7508A(a) pursuant to the Nationwide Emergency Declaration. Section 7508A(a) generally gives the Secretary of the Treasury (Secretary) or his delegate (i.e., the IRS) the discretion to postpone certain tax-related deadlines for up to one year for those taxpayers he or it determines to be affected by a federally declared disaster.[4] Included in this series of IRS notices was I.R.S. Notice 2020-23, 2020-18 I.R.B. 742, which was issued on April 11, 2020.[5] Among other specified deadline extensions, Notice 2020-23 extended the deadline for filing a Tax Court petition to July 15, 2020, for those taxpayers who had a petition due to be filed on

---

[4] When discussing the conferee of discretion in section 7508A(a), we hereinafter refer to the Secretary and IRS interchangeably. *See* § 7701(a)(11)(B), (12)(A)(i).

[5] Also included in this series were, e.g., I.R.S. Notice 2020-17, 2020-15 I.R.B. 590 (postponing the due date for making federal income tax payments), I.R.S. Notice 2020-18, 2020-15 I.R.B. 590 (postponing the due date for filing federal income tax returns), and I.R.S. Notice 2020-20, 2020-16 I.R.B. 660 (postponing the due date for filing federal gift and generation-skipping transfer tax returns and making federal gift and generation-skipping transfer tax payments).

or after April 1, 2020, and before July 15, 2020. *Id.* at 743–44. Notice 2020-23 specified, however, that it did not provide relief for the period for filing a petition if that period expired before April 1, 2020. *Id.* at 744.

On September 2, 2020, respondent filed the Motion on the ground that the Petition was not filed within the time prescribed by section 6213(a) or section 7502. Section 6213(a) provides, in pertinent part, that a taxpayer may file a petition with the Court for a redetermination of a deficiency within 90 days after the notice of deficiency is mailed, not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day. Section 7502 generally allows a timely mailed petition to be treated as timely filed.

On October 8, 2020, petitioners filed a Response to respondent's Motion. Proceeding pro se, petitioners stated in the Response that they did not receive a copy of respondent's Motion and requested a copy. Thereafter, on October 19, 2020, petitioners filed a First Supplement to their Response to respondent's Motion. In the First Supplement, petitioners stated: "We suggest the Tax Court has jurisdiction to hear our case, and to mitigate to 'zero' the IRS assessment and return the withheld refunds. We request the Tax Court to set a trial date in Columbus, OH."

On November 19, 2020, counsel entered an appearance on petitioners' behalf and filed petitioners' Supplemental Objection to respondent's Motion. In that filing, petitioners contended that section 7508A(d) operated in conjunction with the Ohio Disaster Declaration to extend the deadline to file their Petition. Subsection (d) was added to section 7508A on December 20, 2019, and made effective with respect to federally declared disasters declared after that date. Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, div. Q, § 205, 133 Stat. 2534, 3245–46 (2019). On January 13, 2021, the Treasury Department and the IRS proposed regulations with respect to section 7508A(d). *See* Prop. Treas. Reg. § 301.7508A-1(g), 86 Fed. Reg. 2607, 2613 (Jan. 13, 2021). On February 12, 2021, respondent filed a reply to petitioners' supplemental objection, disputing that section 7508A(d) applies in this case. On June 11, 2021, the Treasury Department and the IRS issued final regulations with respect to section 7508A(d). *See* Treas. Reg. § 301.7508A-1(g); T.D. 9950, 86 Fed. Reg. 31,146, 31,150 (June 11, 2021). The final regulations were issued following notice and comment procedures. *See* T.D. 9950, 86 Fed. Reg. at 31,147; Prop. Treas. Reg. § 301.7508A-1, 86 Fed. Reg. at 2607–08. In correspondence with subsection (d), the final regulations were made effective with respect to

disasters declared on or after December 21, 2019. *See* T.D. 9950, 86 Fed. Reg. at 31,149–50.

On August 29, 2023, the Court ordered the parties to address the applicability of the final regulations to this case and the deference, if any, to be given to the regulations. On October 31, 2023, the parties filed their respective simultaneous briefs. On November 6, 2023, the Court permitted the parties to file simultaneous answering briefs, which were filed by respondent and petitioners on November 30, 2023, and December 1, 2023, respectively.

Respondent contends that the final regulations apply to this case, they are entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and petitioners did not timely file their Petition under their provisions. Petitioners agree that *Chevron* provides the proper framework for the Court to review the regulations and that the deadline to file their Petition was not extended under the regulations. They contend, however, that the Petition was timely filed under all reasonable constructions of section 7508A(d) and that Treasury Regulation § 301.7508A-1(g)(1) and (2) is invalid.

*Discussion*

I.      *The Statutory and Regulatory Text*

We first set forth the relevant statutory and regulatory text.

A.      *Section 7508A*

Section 7508A, as in effect when petitioners' petition was filed, provided as follows:

> Sec. 7508A. Authority to postpone certain deadlines by reason of Presidentially declared disaster or terroristic or military actions.
>     (a) In general.—In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A)) or a terroristic or military action (as defined in section 692(c)(2)), the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—
>         (1) whether any of the acts described in paragraph (1) of section 7508(a) were performed

within the time prescribed therefor (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),

(2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and

(3) the amount of any credit or refund.

(b) Special rules regarding pensions, etc.—In the case of a pension or other employee benefit plan, or any sponsor, administrator, participant, beneficiary, or other person with respect to such plan, affected by a disaster or action described in subsection (a), the Secretary may specify a period of up to 1 year which may be disregarded in determining the date by which any action is required or permitted to be completed under this title. No plan shall be treated as failing to be operated in accordance with the terms of the plan solely as the result of disregarding any period by reason of the preceding sentence.

(c) Special rules for overpayments.—The rules of section 7508(b) shall apply for purposes of this section.

(d) Mandatory 60-day extension.—

(1) In general.—In the case of any qualified taxpayer, the period—

(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and

(B) ending on the date which is 60 days after the latest incident date so specified,

shall be disregarded in the same manner as a period specified under subsection (a).

(2) Qualified taxpayer.—For purposes of this subsection, the term "qualified taxpayer" means—

(A) any individual whose principal residence (for purposes of section 1033(h)(4)) is located in a disaster area,

(B) any taxpayer if the taxpayer's principal place of business (other than the business of performing services as an employee) is located in a disaster area,

(C) any individual who is a relief worker affiliated with a recognized government or philanthropic organization and who is assisting in a disaster area,

(D) any taxpayer whose records necessary to meet a deadline for an act described in section 7508(a)(1) are maintained in a disaster area,

(E) any individual visiting a disaster area who was killed or injured as a result of the disaster, and

(F) solely with respect to a joint return, any spouse of an individual described in any preceding subparagraph of this paragraph.

(3) Disaster area.—For purposes of this subsection, the term "disaster area" has the meaning given such term under subparagraph (B) of section 165(i)(5) with respect to a Federally declared disaster (as defined in subparagraph (A) of such section).

(4) Application to rules regarding pensions.— In the case of any person described in subsection (b), a rule similar to the rule of paragraph (1) shall apply for purposes of subsection (b) with respect to—

(A) making contributions to a qualified retirement plan (within the meaning of section 4974(c)) under section 219(f)(3), 404(a)(6), 404(h)(1)(B), or 404(m)(2),

(B) making distributions under section 408(d)(4),

(C) recharacterizing contributions under section 408A(d)(6), and

(D) making a rollover under section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).

(5) Coordination with periods specified by the Secretary.—Any period described in paragraph (1) with respect to any person (including by reason of the application of paragraph (4)) shall be in addition to (or concurrent with, as the case may be) any period specified under subsection (a) or (b) with respect to such person.

B. *Treasury Regulation § 301.7508A-1(g)*

The final regulations issued with respect to section 7508A(d) set forth, in pertinent part, the following rules as to its operation:

Treas. Reg. § 301.7508A-1(g) Mandatory 60-day postponement—

 (1) In general. In addition to (or concurrent with) the postponement period specified by the Secretary in an exercise of the authority under section 7508A(a) to postpone time-sensitive acts by reason of a federally declared disaster, qualified taxpayers (as defined in section 7508A(d)(2)) are entitled to a mandatory 60-day postponement period during which the time to perform those time-sensitive acts is disregarded in the same manner as under section 7508A(a). The rules of this paragraph (g)(1) apply with respect to a postponement period specified by the Secretary under section 7508A(b), to postpone acts as provided in section 7508A(d)(4). Except for the acts set forth in paragraph (g)(2) of this section, section 7508A(d) does not apply to postpone any acts.

 (2) Acts postponed. The time-sensitive acts that are postponed for the mandatory 60-day postponement period are the acts determined to be postponed by the Secretary's exercise of authority under section 7508A(a) or (b). In addition, in the case of any person described in section 7508A(b), the time-sensitive acts postponed for the mandatory 60-day postponement period include those described in section 7508A(d)(4):

  (i) Making contributions to a qualified retirement plan (within the meaning of section 4974(c)) under section 219(f)(3), 404(a)(6), 404(h)(1)(B), or 404(m)(2);

  (ii) Making distributions under section 408(d)(4);

  (iii) Recharacterizing contributions under section 408A(d)(6); and

  (iv) Making a rollover under section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).

II.    *The Parties' Contentions, In General*

Respondent contends that, because they did not mail their Petition until March 17, 2020, petitioners failed to file their Petition within the time prescribed by sections 6213(a) and 7502 and the Court therefore lacks jurisdiction to redetermine the income tax deficiency determined for their taxable year 2018. *See Hallmark Rsch. Collective v. Commissioner*, 159 T.C. 126 (2022) (reaffirming that a timely filed petition is a prerequisite to the Court's exercise of jurisdiction in a deficiency case); *see also Sanders v. Commissioner*, No. 15143-22, 161 T.C. (Nov. 2, 2023) (reaffirming the Court's holding in *Hallmark Rsch. Collective*).    Petitioners contend that section 7508A(d) entitled them to an automatic, mandatory postponement of time to file until March 21, 2020, and that their Petition was therefore timely.    The parties' dispute centers on the proper interpretation of section 7508A(d) and whether Treasury Regulation § 301.7508A-1(g)(1) and (2) provides a valid construction of the statute.

Section 7508A(d)(1) provides that, in the case of any "qualified taxpayer," the period beginning on the earliest incident date specified in the declaration to which the relevant disaster area relates and ending on the date which is 60 days after the latest incident date so specified "shall be disregarded in the same manner as a period specified under [section 7508A(a)]."    Section 7508A(d)(2)(A) defines a "qualified taxpayer" to include an individual whose principal residence is located in a disaster area.  Section 7508A(d)(3), by cross-reference to section 165(i)(5)(A) and (B), defines a disaster area as an area determined by the President to warrant federal assistance under the Stafford Act. Petitioners contend that they are qualified taxpayers because they resided in Ohio at all relevant times.

Petitioners argue that Congress clearly intended section 7508A(d) to operate in a mandatory and automatic manner and, therefore, the Secretary's interpretation of section 7508A(d) fails under *Chevron* step 1. Specifically, petitioners contend that section 7508A(d) provides a mandatory extension of the deadlines and gives no discretion to the Secretary.  In effect, petitioners argue that section 7508A(d)(1) provides an unambiguously self-executing postponement period that, by virtue of its "shall be disregarded in the same manner as a period specified under [section 7508A(a)]" language, incorporates all of the acts referenced by section 7508A(a). Section 7508A(a) references "any of the acts described in paragraph (1) of section 7508(a)."    Section 7508(a)(1) generally postpones the time for performing certain tax-related acts, including the

filing of a petition with the Court for a redetermination of a deficiency, for individuals serving in a combat zone for the U.S. Armed Forces.[6] *See* § 7508(a)(1)(C).  Petitioners therefore conclude that they were entitled to an automatic, mandatory 60-day postponement period from January 20, 2020, the earliest incident date specified in the Ohio Disaster Declaration,[7] to March 21, 2020, to file their Petition.[8]

In reaching this conclusion, petitioners interpret section 7508A(d) to provide for "a mandatory postponement period for taxpayers affected

---

[6] As in effect when petitioners' Petition was filed, section 7508(a)(1) provided 11 categories of acts as follows:

>   (A) Filing any return of income, estate, gift, employment, or excise tax;
>   (B) Payment of any income, estate, gift, employment, or excise tax or any installment thereof or of any other liability to the United States in respect thereof;
>   (C) Filing a petition with the Tax Court for redetermination of a deficiency, or for review of a decision rendered by the Tax Court;
>   (D) Allowance of a credit or refund of any tax;
>   (E) Filing a claim for credit or refund of any tax;
>   (F) Bringing suit upon any such claim for credit or refund;
>   (G) Assessment of any tax;
>   (H) Giving or making any notice or demand for the payment of any tax, or with respect to any liability to the United States in respect of any tax;
>   (I) Collection, by the Secretary, by levy or otherwise, of the amount of any liability in respect of any tax;
>   (J) Bringing suit by the United States, or any officer on its behalf, in respect of any liability in respect of any tax; and
>   (K) Any other act required or permitted under the internal revenue laws specified by the Secretary . . . .

[7] Petitioners suggest that section 7508A(d)(1) does not require that the earliest and latest specified incident dates be different dates and that, because January 20, 2020, is the only incident date specified in the Ohio Disaster Declaration, it is both the earliest and latest specified date.  Respondent raises no dispute in this regard.

[8] Petitioners calculate March 21, 2020, as the 60th day after January 20, 2020. Because 2020 was a leap year, however, we note that March 20, 2020, is in fact the 60th day after January 20, 2020.

We further note that on February 10, 2023, FEMA and the Department of Homeland Security amended the "notices of major disaster declarations and related determinations resulting from the . . . pandemic beginning on January 20, 2020." Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023).  The amendments provided that "the incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023." *Id*.  Because these amendments have no impact on the outcome of this case, we address them no further.

by federally declared disasters, separate from but complementing the discretionary postponement provision in section 7508A(a)." And, because Treasury Regulation § 301.7508A-1(g)(1) and (2) limits the acts subject to the mandatory postponement period of section 7508A(d) to "the acts determined to be postponed by the Secretary's exercise of authority under section 7508A(a) or (b)," petitioners construe the regulations as "nullify[ing] subsection (d), in its entirety, and convert[ing] a mandatory provision to a permissive provision." Contending that the regulations thereby conflict with the statutory scheme and its legislative purpose, petitioners stake their position that the regulations are invalid under the *Chevron* standard.

Respondent contends that the "shall be disregarded in the same manner as a period specified under [section 7508A(a)]" language of section 7508A(d)(1) does not clearly provide a self-executing postponement period for the acts referenced by section 7508A(a) but that it is instead silent and ambiguous as to the acts to which the mandatory postponement period applies. To that end, respondent further contends that the statute is ambiguous in two ways: First, Congress did not address what specific time-sensitive acts are postponed pursuant to section 7508A(d), and second, Congress did not directly address federally declared disasters without an incident date under section 7508A. In respondent's view, the regulations are necessary to resolve these ambiguities.

Respondent contends that the regulations provide a permissible and reasonable construction of the statute that builds upon the "statutory nexus between the time-sensitive acts in I.R.C. § 7508A(a) and (d)." Consequently, he concludes that the regulations are entitled to *Chevron* deference. Respondent notes that the Secretary did not use his discretion under section 7508A(a) in response to the Ohio Disaster Declaration to postpone the time for petitioners to file a petition with the Court. Instead, he points us to the Nationwide Emergency Declaration on which the Secretary relied to issue Notice 2020-23. Because the Secretary relied on the Nationwide Emergency Declaration rather than the Ohio Disaster Declaration to extend certain timeframes pursuant to section 7508A(a), respondent argues that the Ohio Disaster Declaration does not trigger section 7508A(d). In his view, the regulations implement respondent's reading of section 7508A(d) and dictate that the Ohio Disaster Declaration did not extend the time for petitioners to file their Petition. We disagree.

III.    *Chevron Analysis*

To interpret section 7508A(d) and consider whether Treasury Regulation § 301.7508A-1(g)(1) and (2) provides a valid construction of the statute, we turn to *Chevron* and its familiar two-step analysis. In *Chevron*, the Supreme Court provided the following framework for court review of an agency's authoritative construction of a statute:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842–43 (footnotes omitted).

At step 1 of the *Chevron* analysis, we must therefore ask whether Congress has directly spoken to the precise question at issue. *Id.* at 842. And, if we determine the statute is silent or ambiguous on the point, we proceed to *Chevron* step 2 where we ask whether the agency's answer is based on a permissible construction of the statute. *Id.* at 843. Consequently, we do not ask whether the agency's statutory interpretation is the best one possible. *See Atl. Mut. Ins. Co. v. Commissioner*, 523 U.S. 382, 389 (1998). Instead, we inquire only whether the agency made a reasonable policy choice in reaching its interpretation. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005); *see also Ohio Periodical Distribs., Inc. v. Commissioner*, 105 F.3d 322, 326 (6th Cir. 1997), *aff'g* T.C. Memo. 1995-496. And we defer to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44; *see also Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44 (2011) (confirming that *Chevron* deference

applies to both specific authority and general authority Treasury regulations).

Turning here to *Chevron* step 1, we identify the precise question at issue as whether section 7508A(d) automatically entitles a qualified taxpayer to a mandatory extension to file a petition with the Tax Court in the context of a federal disaster declaration containing an incident date. To determine whether Congress has spoken to this question, we consider the "plain" and "literal" language of the statute itself, the specific context in which the language is used, and the broader context of the statute as a whole. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *Allen v. United States*, 83 F.4th 564, 569 (6th Cir. 2023). In so doing, we employ the traditional tools of statutory construction, including the canons of construction.[9] *See Chevron*, 467 U.S. at 843 n.9; *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 904 (6th Cir. 2021); *Sunrise Coop., Inc.*, 891 F.3d at 656.

Petitioners argue that section 7508A(d) unambiguously provides a self-executing postponement period for all of the tax-related acts included in section 7508(a)(1) by cross-reference to section 7508A(a). In their view, the contrast of the discretionary language of section 7508A(a) with the mandatory language of section 7508A(d) demonstrates that Congress intended these tax deadlines to be automatically extended when it added subsection (d). In support of this view, petitioners provide on brief the following table to illustrate the distinctions between the language of subsection (a) and subsection (d)(1):[10]

---

[9] The Sixth Circuit has explained that "[w]hen a statute is unambiguous, resort to legislative history and policy considerations is improper." *Sunrise Coop., Inc. v. USDA*, 891 F.3d 652, 658 (6th Cir. 2018) (quoting *Koenig Sporting Goods, Inc. v. Morse Rd. Co. (In re Koenig)*, 203 F.3d 986, 988 (6th Cir. 2000)). As we conclude *infra* that the statute at issue is unambiguous, we do not consider legislative history in our application of the canons of construction. *See Square D Co. & Subs. v. Commissioner*, 118 T.C. 299, 310 n.6 (2002) ("The extent to which extrinsic factors (i.e., factors outside the statutory language itself) may be considered in step 1 of a *Chevron* analysis may not be entirely clear . . . . In light of the position of the Court of Appeals, we do not consider legislative history as part of our analysis of step 1 of *Chevron* in the instant case."), *aff'd*, 438 F.3d 739 (7th Cir. 2006).

[10] Petitioners reproduced this table from a comment submitted with respect to the proposed regulations. *See* Jonathan L. Holbrook & Spencer F. Walters, Comment on Mandatory 60-Day Postponement of Certain Tax-Related Deadlines by Reason of a Federally Declared Disaster, at 5 (Mar. 14, 2021), https://www.regulations.gov/comment/IRS-2021-0002-0008 (choose "Download").

| *Aspect* | *Subsection (a)* | *[Subsection] (d)(1)* |
|---|---|---|
| *Whether* to disregard | Discretionary: "the Secretary **may** specify a period" | Automatic: "the period . . . **shall** be disregarded" |
| *How long* to disregard | Discretionary: "**up to** 1 year" | Automatic: "**beginning on** the earliest incident [date*] . . . and **ending on** the date which is 60 days after the latest incident date" |
| *For whom* to disregard | Discretionary: "a taxpayer **determined by the Secretary** to be affected" | Automatic: "**any** qualified taxpayer" |
| *For what purposes* to disregard | Discretionary: "a period . . . that **may** be disregarded in determining . . . any of the acts described in paragraph (1) of section 7508(a)[**] . . . the amount of any interest, penalty, additional amount, or addition to tax . . . and the amount of any credit or refund" | Automatic: "the period . . . *shall*[***] be disregarded in the same manner as a period specified under subsection (a)" |

*Petitioners' brief incorrectly omitted this word.
**Petitioners' brief incorrectly refers to section 7508A(a) here.
***Emphasis added.

According to petitioners, respondent disregards "this clear difference in language between subsections (a) and (d)."

Respondent, in turn, contends that section 7508A(d) is silent and ambiguous "in at least two ways . . . . First, Congress did not identify the time sensitive acts subject to I.R.C. § 7508A(d). Second, Congress did not specify how the mandatory postponement in I.R.C. § 7508A(d) applies to a Federal disaster declaration without an incident date." Respondent first argues that the statute is ambiguous regarding whether a taxpayer has an automatic, mandatory postponement period for filing a Tax Court petition. Respondent contends this is so because, except for the rules regarding pensions described in section 7508A(d)(4), subsection (d) does not specify the time-sensitive acts to be postponed during the mandatory postponement period but only that the period is to be disregarded "in the same manner as a period specified under subsection (a)." § 7508A(d)(1). Respondent disagrees with petitioners' reading of the statute to state that section 7508A(d) requires every act that the Secretary has discretion to postpone under section 7508A(a) to be independently postponed for a mandatory period under section 7508A(d), regardless of whether the Secretary actually postponed any acts under section 7508A(a). According to respondent, this approach "clearly was not required by the language" of the statute. Respondent

also argues that the statute is ambiguous because Congress did not specify how the mandatory postponement period in section 7508A(d) applies to a federal disaster declaration without an incident date. Concluding that the statute is ambiguous for these two reasons, respondent urges us to move on to *Chevron* step 2.

A provision will be considered ambiguous where the disputed language is "reasonably susceptible of different interpretations." *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985); *see also Gun Owners of Am., Inc.*, 19 F.4th at 904–05 ("[B]oth terms admit of more than one interpretation—that is, they are ambiguous."); *All. for Cmty. Media v. FCC*, 529 F.3d 763, 778 (6th Cir. 2008); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1351 (6th Cir. 1994). We conclude that, in the context of a federal disaster declaration containing an incident date, subsection (d) is not reasonably susceptible of different interpretations with respect to whether a qualified taxpayer is automatically entitled to a mandatory extension to file a petition with the Tax Court. We agree with petitioners that the natural reading of subsection (d) is that a qualified taxpayer is so entitled.

We first consider the mandatory nature of subsection (d). As the foregoing chart demonstrates, the mandatory language of subsection (d) stands in stark contrast to the discretionary language of subsection (a). Under the discretionary language of section 7508A(a), the Secretary may specify (1) whether a period is disregarded, (2) how long a period is disregarded, (3) for whom a period is disregarded, and (4) for what purposes a period is disregarded. The mandatory language of subsection (d), however, provides the Secretary no discretion whatsoever regarding any of these four aspects of the extension. Instead, subsection (d) provides that, for a defined person, a defined period "shall be disregarded" in a defined manner. On the basis of the plain and literal language of the statute, we thus read Congress to have clearly intended to provide for a postponement period that is mandatory. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016) ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) (describing the "Mandatory/Permissive Canon").

The heading of subsection (d)—"Mandatory 60-day extension"— further confirms this reading. As has been established, "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *See Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S.

519, 528–29 (1947); *see also* § 7806(b) (providing that no "descriptive matter relating to the content of this title [shall] be given any legal effect"). They are, however, "'tools available for the resolution of a doubt' about the meaning of a statute." *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Bhd. of R.R. Trainmen*, 331 U.S. at 529); *United States v. Nakhleh*, 895 F.3d 838, 841 (6th Cir. 2018) (quoting *Almendarez-Torres*, 523 U.S. at 234). In the case of section 7508A(d), the heading is not at any variance with the text. The language of subsection (d) speaks of the defined postponement period in mandatory terms, and the heading uses the term "mandatory" itself. Consequently, this is an instance in which the heading is of some use for interpretative purposes, and it supports our reading of the statute. *See Caltex Oil Venture v. Commissioner*, 138 T.C. 18, 28 (2012); *see also* Scalia & Garner, *supra*, at 221 (describing the "Title-and-Headings Canon").

Having established our general understanding that section 7508A(d) creates a mandatory postponement period, we next consider whether the statute requires that this period automatically extend the date for filing a Tax Court petition by at least 60 days. Respondent argues that the statute is silent and hence ambiguous in this regard. Petitioners, meanwhile, contend that section 7508A(d)(1) provides an unambiguously self-executing postponement period that, by virtue of the requirement that the period "shall be disregarded in the same manner as a period specified under [section 7508A(a)]," incorporates all of the acts referenced by section 7508A(a), including the deadline to file a petition with the Tax Court.

Petitioners allow that "[a]t first glance it seems possible" the "in the same manner" language of subsection (d)(1) could be construed as ambiguous, referring either to the specific time-sensitive acts which may be postponed by operation of section 7508A(a) or to the process by which the Secretary grants a postponement under subsection (a). They argue, however, that full consideration of the statute makes clear that respondent's interpretation conflicts with both the plain wording and the mandatory and specific nature of subsection (d). Petitioners query: "Why would Congress provide qualified taxpayers with an automatic 60-day extension, only to have it limited, or even nullified if the Secretary doesn't act? That makes no sense."

We acknowledge that, in other statutory contexts, the phrase "in the same manner" has been construed as meaning "to use the same 'methodology and procedures.'" *See Nat'l Fed'n of Indep. Bus. v.*

*Sebelius*, 567 U.S. 519, 545 (2012) (interpreting the section 5000A(g)(1) requirement that a "[s]hared responsibility payment" made with respect to minimum essential healthcare coverage "be assessed and collected in the same manner" as tax penalties); *Michigan v. DeVos*, 481 F. Supp. 3d 984, 992 (N.D. Cal. 2020) (interpreting the requirement of Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 18005, 134 Stat. 281, 568 (2020), that local educational agencies receiving certain funds "provide equitable services in the same manner" as provided under section 1117 of the Elementary and Secondary Education Act of 1965). We further acknowledge that the phrase has also been interpreted as ambiguous. *See Ass'n of Irritated Residents v. EPA*, 790 F.3d 934, 948 (9th Cir. 2015) (construing the 42 U.S.C. § 7410(k)(6) provision for the correction of an erroneous approval, disapproval or promulgation by the Environmental Protection Agency "in the same manner as" such approval, disapproval, or promulgation as ambiguous with respect to whether the phrase imposed a procedural or substantive requirement); *see also Swallows Holding, Ltd. v. Commissioner*, 515 F.3d 162, 171 (3d Cir. 2008) (construing the section 882(c)(2) requirement that certain returns be filed "in the manner prescribed in subtitle F" as ambiguous with respect to whether the term "manner" included an element of timeliness), *vacating and remanding* 126 T.C. 96 (2006). Upon conducting the required consideration of the plain and literal language of section 7508A(d), the specific context in which the language is used, and the broader context of the statute as a whole, however, we conclude that the "in the same manner" language of this statute is not "reasonably susceptible" of being interpreted to refer to the process or procedure by which the Secretary grants a postponement under subsection (a) or of demonstrating any ambiguity; instead, it provides for an unambiguously self-executing postponement period that incorporates all of the acts referenced by section 7508A(a).

To understand the requirement that the subsection (d) postponement period "shall be disregarded in the same manner as a period specified under subsection (a)," we necessarily look to section 7508A(a). Section 7508A(a) provides, in pertinent part: "In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster . . . , the Secretary may specify a period of up to 1 year that may be disregarded in determining . . . whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor." When we read the "shall be disregarded" language of subsection (d) in this context, the manner in which the subsection (d) postponement period must be treated becomes readily apparent. More specifically, the mandatory postponement period "shall

be disregarded" "in determining, . . . whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor."

The plain and literal language of subsections (a) and (d) read together demonstrates that the deadlines for "any of the acts" described in section 7508(a)(1) "may" be disregarded under section 7508A(a) but that those deadlines "shall be disregarded" under section 7508A(d). Petitioners and respondent appear to agree that the "may" language of section 7508A(a) provides the Secretary with the discretion to postpone deadlines for any or all of the categories of acts identified by section 7508(a)(1). They dispute only whether the "in the same manner" language carries this discretion over to the mandatory postponement period set forth by subsection (d) (or is simply silent on the matter). But, we see neither ambiguity nor silence in subsection (d) on the point. Instead, we see a near mirror image of section 7508(a).

Section 7508(a) provides that, for a defined person, a defined period "shall be disregarded" in a defined manner, i.e., in determining whether "any of the . . . acts [described in its paragraph (1)] was performed within the time prescribed therefor." We have readily construed that provision as requiring an extension of the time that includes a postponement of the period to file a petition with this Court. *See Stone v. Commissioner*, 73 T.C. 617, 620–21 (1980) ("Section 7508(a)(1)(C) excludes the period during which a member of the Armed Forces is present in a 'combat zone' in determining the time allowable for the filing of a petition with the Tax Court for a redetermination of a deficiency."); *Munoz v. Commissioner*, T.C. Memo. 2000-18, 79 T.C.M. (CCH) 1366, 1367 ("Section 7508(a)(1)(C) serves to extend the normal 90-day . . . period within which a petition must generally be filed by disregarding the time when a member of the Armed Forces is present in a combat zone . . . ."); *see also, e.g., Hampton v. United States*, 513 F.2d 1234, 1246 (Ct. Cl. 1975) ("A Serviceman in combat is also given an automatic extension of time to perform certain acts under the revenue laws by virtue of § 7508 of the Code. . . . The postponement authorized under § 7508 generally applies to the filing of returns, the payment of any tax, the assessment of any tax, and the commencement of any suit."). We read the language and context of section 7508A(d) to lend itself just as readily to the same interpretation.

We also view the coordination provision of section 7508A(d)(5) as further bolstering this interpretation. Subsection (d)(5) provides that "[a]ny period described in [subsection (d)](1) with respect to any person

(including by reason of the application of [subsection (d)](4)) shall be in addition to (or concurrent with, as the case may be) any period specified under subsection (a) . . . with respect to such person." We read the broad and inclusive language of this subsection to allow a mandatory extension described under section 7508A(d) to operate independently from any discretionary extension specified under section 7508A(a).

Having given full consideration to section 7508A(d) and its context, we must agree with petitioners that respondent's interpretation conflicts with both the plain wording and the mandatory and specific nature of subsection (d). Postponement of any section 7508(a)(1) act would not be mandatory if it needed to be triggered by a discretionary act of the Secretary, who could use his discretion not to act at all. Instead, we think Congress's intent is clear. For a defined person (a "qualified taxpayer"), a defined period ("beginning on the earliest incident date . . . and . . . ending on the date which is 60 days after the latest incident date") "shall be disregarded in the same manner as a period specified under subsection (a)" of section 7508A, that is by mandatorily and automatically disregarding "whether any of the acts described in paragraph (1) of section 7508(a)," including the act of filing a petition with the Court, "were performed within the time prescribed therefor."[11]

Respondent also contends that the statute is ambiguous because it does not address federally declared disasters without an incident date. In support of this contention, respondent points to the Nationwide Emergency Declaration that did not specify an incident date. Respondent contends that "Congress did not address whether the mandatory 60-day postponement in subsection (d) applies to Federal disaster declarations that do not have an incident date. Therefore, I.R.C. § 7508A(d) is ambiguous with respect to Federal disaster declarations without an incident date, which satisfies the first step in the Chevron framework."

Petitioners, however, do not argue that they are entitled to a 60-day postponement with respect to the Nationwide Emergency Declaration. Instead, petitioners focus on the Ohio Disaster

---

[11] Recall that a qualified taxpayer, in addition to one who principally resides in a disaster area, is defined to include, inter alia, "any taxpayer whose records necessary to meet a deadline for an act described in section 7508(a)(1) are maintained in a disaster area." § 7508A(d)(2)(D). This definition, which appears to sweep in records with respect to all of the categories described by section 7508(a)(1), offers additional and noteworthy context.

Declaration, which determined "that the emergency conditions in the State of Ohio resulting from the [COVID-19] pandemic beginning on January 20, 2020, and continuing, are of sufficient severity and magnitude to warrant a major disaster declaration under the [Stafford Act]." The precise question at issue here addresses the context of a federal disaster declaration containing an incident date, and we conclude that Congress has directly spoken to that precise question. *See Chevron*, 467 U.S. at 842.

Petitioners' situation demonstrates that the Court's reading of section 7508A(d) does not render section 7508A(a) a nullity. Instead, by giving effect to every word that Congress used in the statute, it protects taxpayers like them with the required "mandatory 60-day extension" while the Secretary considers whether and how to exercise his discretion under subsection (a). *See Lowe v. SEC*, 472 U.S. 181, 207 n.53 (1985); *see also* Scalia & Garner, *supra*, at 174 (describing the "Surplusage Canon"). Having concluded that section 7508A(d) unambiguously provides for a mandatory, automatic extension of at least 60 days for the time to file a petition with the Tax Court, we conclude that deference to Treasury Regulation § 301.7508A-1(g)(1) and (2) is unwarranted, and we hold Treasury Regulation § 301.7508A-1(g)(1) and (2) invalid to the extent it limits the non-pension-related "time-sensitive acts that are postponed for the mandatory 60-day postponement period . . . [to] the acts determined to be postponed by the Secretary's exercise of authority under section 7508A(a)."[12] *See Chevron*, 467 U.S. at 842–43.

Respondent's regulation, promulgated after the petition in this case was filed, cannot change the result dictated by an unambiguous statute. *See, e.g.*, *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021) ("[A]s this Court has long made plain, pleas of administrative inconvenience and self-serving regulations never 'justify departing from the statute's clear text.'" (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018)); *Chevron*, 467 U.S. at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). We do not reach *Chevron* step 2.

---

[12] The parties do not address the validity of Treasury Regulation § 301.7508A-1(g)(1) and (2) as to section 7508A(b) and (d)(4), and their pension-related provisions; accordingly, in reaching this holding, neither do we.

IV.    *Conclusion*

As in effect when petitioners' Petition was filed, section 7508A(d)(1) provided that, in the case of any "qualified taxpayer," the period beginning on the earliest incident date specified in the declaration to which the relevant disaster area relates, and ending on the date which is 60 days after the latest incident date so specified, "shall be disregarded in the same manner as a period specified under [section 7508A(a)]." We have determined this language provides for an automatic and mandatory postponement period that incorporates all of the acts referenced by section 7508A(a), including the filing of a Tax Court petition for the redetermination of a deficiency, and interpret it to do so. The parties do not dispute that petitioners resided in Ohio at all relevant times. *See* § 7508A(d)(2). Petitioners are therefore qualified taxpayers entitled to an automatic 60-day postponement period starting from January 20, 2020, the earliest incident date specified in the Ohio Disaster Declaration, to at least March 20, 2020, to file their Petition.[13] The parties agree that petitioners mailed their petition to the Court on March 17, 2020. As petitioners' Petition was mailed on March 17, 2020, their Petition was timely and we have jurisdiction in this case. *See* § 7502. We will therefore deny respondent's Motion.

We have considered the parties' other arguments and, to the extent they are not discussed herein, find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[13] *See supra* notes 7–8. We need not, and therefore do not, express a view on what the outer limits of the extension period may be where a declaration omits an ending date or is extended. *See Stromme v. Commissioner*, 138 T.C. 213, 218 n.8 (2012). We note, however, that effective with respect to federally declared disasters declared after November 15, 2021, the extension period has been redefined to end "on the date which is 60 days after the later of . . . [the] earliest incident date . . . or the date such declaration was issued." *See* Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, § 80501, 135 Stat. 429, 1335 (2021).

Reviewed by the Court.

KERRIGAN, FOLEY, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, TORO, GREAVES, and WEILER, *JJ.*, agree with this opinion of the Court.

BUCH, *J.*, concurring.

JONES, *J.*, concurring.

BUCH, *J.*, concurring: I join the opinion of the Court with only a few additional observations. Following the parties' lead, the opinion of the Court reviews the issue before us under the familiar *Chevron* two-step framework, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and correctly concludes under that framework that Treasury Regulation § 301.7508A-1(g) is invalid to the extent it limits the acts subject to the mandatory postponement period of section 7508A(d). I note, however, that the continued viability of *Chevron* is under review. *See Relentless, Inc. v. Dep't of Com.*, 144 S. Ct. 325 (2023) (granting certiorari for the question of whether the Supreme Court should overrule *Chevron*). And we could reach the same conclusion without our heavy reliance on *Chevron*.

Over a century of precedent supports the unremarkable proposition that "[a] regulation to be valid must be reasonable and must be consistent with law." *Int'l Ry. Co. v. Davidson*, 257 U.S. 506, 514 (1922). Before *Chevron*, it was clear that "regulations, in order to be valid, must be consistent with the statute under which they are promulgated." *United States v. Larionoff*, 431 U.S. 864, 873 (1977). In recent years, the Supreme Court has held regulations to be inapplicable with only a fleeting reference to *Chevron*, *see, e.g.*, *Sturgeon v. Frost*, 139 S. Ct. 1066, 1080 n.3 (2019), or without referencing *Chevron* at all, *see, e.g.*, *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021). And the Supreme Court has specifically stated that it "need not resort to *Chevron* deference . . . [when] Congress has supplied a clear and unambiguous answer to the interpretive question at hand." *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018).

Regardless of whether the Supreme Court continues to adhere to or overrules *Chevron*, we would reach the same conclusion here. The Petition is timely under the mandatory postponement period of section 7508A(d), and Treasury Regulation § 301.7508A-1(g) cannot change that result.

NEGA, ASHFORD, URDA, COPELAND, TORO, and GREAVES, *JJ.*, agree with this concurring opinion.

JONES, *J.*, concurring: I join the opinion of the Court in full. I write separately to underscore the consistency of the Court's analysis in *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), and *Sanders v. Commissioner*, No. 15143-22, 161 T.C. (Nov. 2, 2023), with our holding here as well as the overall statutory scheme, particularly the Anti-Injunction Act (AIA).

I.      *Section 6213(a): Deficiency Jurisdiction*

The debate over the nature of the procedural requirement in section 6213(a) has intensified in the wake of the Supreme Court's decision in *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493 (2022). Therein, the Supreme Court held that section 6330(d)(1)—the statute that imposes the procedural requirement for filing a petition with the Tax Court in a collection due process case—is a nonjurisdictional deadline subject to equitable tolling. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501. In doing so, the Supreme Court rejected the Commissioner's argument that the express jurisdictional text of section 6330(e)(1) suggested that the deadline under section 6330(d)(1) was also jurisdictional. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499–500. The Supreme Court stated that while there were indicia that the Commissioner's interpretation may have been the better one, there was not a clear expression from Congress and the arguments highlighted the lack of clarity in the statute. *Id.* at 1499. Because section 6330(d)(1) was susceptible to multiple plausible interpretations, there was not a clear expression from Congress to imbue jurisdictional consequences. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1498. Thus, the Supreme Court held that the statute is not jurisdictional. *Id.* at 1501.

Section 6213 is arguably similar to section 6330. Accordingly, in *Hallmark*, this Court was asked to consider the jurisdictional nature of section 6213(a) in light of the Supreme Court's decision in *Boechler. See Hallmark Rsch. Collective*, 159 T.C. at 126. We held that the 90-day deficiency deadline under section 6213(a) is jurisdictional, and therefore not subject to equitable tolling. *Hallmark Rsch. Collective*, 159 T.C. at 166–67. In doing so, the Court principally relied on the prior-construction canon and the lengthy "history of reenactments of and amendments to section 6213(a) [that] demonstrate[d] that Congress's intention [was] to provide an adequate but strict timeframe within which a taxpayer may file a deficiency petition in the Tax Court." *Id.* at 161; *see Sanders*, 161 T.C., slip op. at 7 (describing the prior-construction canon as the principal ground of our decision in *Hallmark*).

However, in *Culp v. Commissioner*, 75 F.4th 196, 205 (3d Cir. 2023), *petition for cert. filed*, No. 23-1037 (U.S. Mar. 19, 2024), the U.S. Court of Appeals for the Third Circuit held that the 90-day deadline to petition for redetermination of a tax deficiency is a nonjurisdictional deadline subject to equitable tolling. The Third Circuit relied significantly on the Supreme Court's analysis in *Boechler*. *See Culp v. Commissioner*, 75 F.4th at 200–04 (citing *Boechler* throughout the opinion). Highlighting the similarities between section 6330(d)(1) and section 6213(a), the Third Circuit reasoned that "[i]f the § 6330(d)(1) deadline in *Boechler* fell short of being jurisdictional, § 6213(a)'s limit must as well." *Culp v. Commissioner*, 75 F.4th at 201. The Court stated that there is no "clear tie between the deadline and the jurisdictional grant," *id.* at 201–02 (quoting *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499), and that the remote possibility of a dismissal for untimeliness having preclusive effect in a section 7422 refund suit "does little to bolster the IRS's case for the deadline being jurisdictional," *Culp v. Commissioner*, 75 F.4th at 202; *see also* § 7459(d).

Thereafter, in *Sanders*, this Court was tasked with "thoroughly reconsider[ing] the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, . . . follow[ing] the higher court." *Sanders*, 161 T.C., slip op. at 6 (quoting *Lawrence v. Commissioner*, 27 T.C. 713, 716–17 (1957), *rev'd on other grounds*, 258 F.2d 562 (9th Cir. 1958)). In doing so, we declined to follow the Third Circuit's interpretation and reaffirmed our decision in *Hallmark* to conclude that section 6213(a) imposes a jurisdictional deadline in all cases except those appealable to the Third Circuit. *Sanders*, 161 T.C., slip op. at 7–8.[1]

Today, the opinion of the Court holds that section 7508A(d) provides for an unambiguously self-executing postponement period for certain acts set forth in section 7508(a), including the filing of a petition for redetermination with the Tax Court. § 7508(a)(1)(C); *see* op. Ct. p. 18. This position is consistent with the Court's prior decisions in *Hallmark* and *Sanders* that the deadline under section 6213(a) is jurisdictional, because unlike equitable exceptions, statutory exceptions to jurisdictional deadlines are of course permissible. Moreover, our prior decisions in *Hallmark* and *Sanders* are further undergirded by the

---

[1] The Solicitor General recently filed a petition for a writ of certiorari in *Culp*, asking the Supreme Court to review and reverse the Third Circuit's decision. Petition for Writ of Certiorari at 10, *Commissioner v. Culp*, No. 23-1037 (U.S. Mar. 19, 2024). As of this writing, a response is due on April 18, 2024.

jurisdictional nature of the AIA, codified under section 7421(a), as I explain below.

II.     *Section 7421(a): The Anti-Injunction Act*

The AIA was first enacted in 1867, and it has remained continuously in effect and largely unamended since then. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 731 n.6 (1974) (comparing text of Act of Mar. 2, 1867, ch. 169, § 10, 14 Stat. 471, 475, with section 7421(a)). Now codified in section 7421(a), the statute provides:

> Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

For those who consider legislative history relevant, *Warger v. Shauers*, 574 U.S. 40, 48 (2014), the AIA has no recorded legislative history, "but its language could scarcely be more explicit," *Bob Jones Univ.*, 416 U.S. at 736. The Supreme Court has interpreted the principal purpose of the AIA as the "protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Id.* at 736–37 (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). In short, "[t]he object of [section] 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."[2] *Williams Packing & Navigation Co.*, 370 U.S. at 5.

Historically, the government has had broad power to collect taxes, and the AIA has served as a critical component of the statutory scheme

---

[2] The AIA does not apply in every situation, but rather the AIA "kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'" *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1590 (2021). Where a suit does not run against a tax at all, the AIA has no applicability. *Id.* at 1593. A suit seeking relief from a separate legal mandate that is only backed up by a tax provision is not a dispute over taxes. *Id.*; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 543–44 (2012) (distinguishing between a "tax" and a "penalty").

by limiting the power of taxpayers to seek pre-enforcement judicial review. *See* § 7421(a). "Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund," *NFIB*, 567 U.S. at 543 (citing *Williams Packing & Navigation Co.*, 370 U.S. at 7–8), and several courts have characterized the constraints of the AIA as jurisdictional, *see Bob Jones Univ.*, 416 U.S. at 749. The AIA has "almost literal effect," thereby depriving courts of jurisdiction over any suit for the purpose of restraining the assessment or collection of any tax. *Id.* at 737, 749; *see also Maze v. IRS*, 862 F.3d 1087, 1091 (D.C. Cir. 2017); *Cohen v. United States*, 650 F.3d 717, 729 (D.C. Cir. 2011). In *Williams Packing & Navigation Co.*, 370 U.S. at 7, the Supreme Court stated that if the judicial exception to the AIA did not apply then "the District Court is without jurisdiction, and the complaint must be dismissed." And more recently, at least two courts of appeals have stated that the AIA is jurisdictional. *See Rocky Branch Timberlands LLC v. United States*, No. 22-12646, 2023 WL 5746600, at *1 (11th Cir. Sept. 6, 2023) ("When the Anti-Injunction Act applies, it deprives federal courts of jurisdiction." (quoting *United Mine Workers of Am. Combined Benefit Fund v. Toffel (In re Walter Energy, Inc.)*, 911 F.3d 1121, 1136 (11th Cir. 2018)), *cert. denied*, No. 23-614, 2024 WL 674784 (U.S. Feb. 20, 2024); *Optimal Wireless LLC v. IRS*, 77 F.4th 1069, 1073 (D.C. Cir. 2023) (stating that the AIA "'deprive[s] the District Court of jurisdiction' when it applies" (alteration in original) (quoting *Bob Jones Univ.*, 416 U.S. at 749)).

III.    *The Relationship Between Sections 6213(a) and 7421(a)*

When considering the procedural requirement imposed by section 6213(a), we must consider the "text, context, and relevant historical treatment" of the provision. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). While Congress must make a clear statement evidencing the procedural requirement's jurisdictional effect, *see id.*, Congress need not "make its clear statement in a single section or in statutory provisions enacted at the same time," *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 466 (2024) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000)). The relationship between sections 6213(a) and 7421(a) provides important context when considering the jurisdictional nature of section 6213(a) and reveals Congress's clear expression of the statute's jurisdictional effect.

To better protect taxpayers' rights, Congress established what is now section 6213(a) as a limited exception to the AIA. Revenue Act of 1924, ch. 234, § 274, 43 Stat. 253, 297. Thus, 57 years after enacting the

AIA, Congress amended the statutory scheme to create a limited exception to the default rule, which permits a taxpayer to sustain a challenge to taxes only after the amounts are paid and the taxpayer sues for a refund. *Compare* Act of Mar. 2, 1867, § 10, 14 Stat. at 475, *with* Revenue Act of 1924, § 274, 43 Stat. at 297. *See also* § 7422; *Williams Packing & Navigation Co.*, 370 U.S. at 7–8; *Hallmark Rsch. Collective*, 159 T.C. at 134. In a deficiency proceeding before this Court, taxpayers are afforded the opportunity to seek prepayment de novo review of the IRS's deficiency determination. *Hallmark Rsch. Collective*, 159 T.C. at 134, 165. But review under section 6213 occurs within the broader statutory scheme that is framed by the jurisdictional constraints of the AIA, codified under section 7421(a).

Specifically, section 7421(a) provides: "Except as provided in section[] . . . 6213(a), . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." And section 6213(a) provides: "Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed . . . , the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency."

If a "taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a) [of section 6213, i.e., within the 90 or 150-day deadline], the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary." § 6213(c). A taxpayer's failure to file suit within the prescribed period triggers the Government's duty to assess and collect the tax. *See id.*; *see also Hallmark Rsch. Collective*, 159 T.C. at 161–62 n.29. Thus, any suit subsequently filed with the Tax Court (such as one sustained through the application of equitable tolling) would restrain the government's ability to assess a tax that it had the right to assess when the taxpayer failed to timely petition the Court.[3] Such a suit would therefore exceed the jurisdictional limits imposed by section 6213(a) and the AIA and violate the restrictions imposed by the AIA. *See* § 7421(a); *Bob Jones Univ.*, 416 U.S. at 736–37 (citing *Williams Packing & Navigation Co.*, 370 U.S. at 7).

---

[3] By contrast, the Court's holding here does not raise such a concern, because section 7508A(d) provides a statutory extension to the section 6213(a) deadline. Suits filed timely under section 7508A(d) are therefore filed "as provided in section[] . . . 6213(a)" for purposes of the AIA. § 7421.

IV.    *Conclusion*

But for the limited exceptions provided therein, section 7421 provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." The foregoing demonstrates that the opinion of the Court is consistent with the Court's analysis in *Hallmark* and *Sanders*, as well as the context of the statutory framework established by the AIA.

BUCH, NEGA, URDA, COPELAND, and TORO, *JJ.*, agree with this concurring opinion.

GREAVES, *J.*, agrees with Part I of this concurring opinion.